UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**WHITE RIVER CONTRACTING, LLC,**<br><br>        Debtor. | Case No. **20-90251-BPH** |
| **KURT and DIANE WARD,**<br><br>        Plaintiffs.<br><br>-vs-<br><br>**WHITE RIVER CONTRACTING, LLC, d/b/a ROCKY MOUNTAIN LOG HOMES; CRAIG ROSTAD; JEREMY OURY; MIKE TURLEY; TERRY CLEVELAND; and JAKE HAYES**<br><br>        Defendants. | Adv. No. **21-09001-BPH** |

**MEMORANDUM OF DECISION**

In this adversary proceeding, Debtor/Defendant White River Contracting, LLC ("White River") and Non-Debtor Defendants, Craig Rostad, Jeremy Oury, Mike Turley, Terry Cleveland, and Jake Hayes ("Non-Debtor Defendants") filed Motions to Dismiss this proceeding.[1]

---

[1] ECF Nos. 4 and 10 (the Motions will be referred to individually as either "White River's Motion" or "Non-Debtor Defendants' Motion" and collectively as the "Motions"). References to "ECF Nos." refer to the docket in this adversary case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure

1

Generally, White River's Motion asserts that dismissal is appropriate because Plaintiffs' Complaint fails to state claims upon which relief can be granted. The Non-Debtor Defendants' Motion contend that the matter must be dismissed because this Court lacks subject matter jurisdiction. Plaintiffs filed a Response to the Motions arguing that dismissal of this action was inappropriate. Plaintiffs argue that the Complaint states plausible causes of action sufficient to survive a motion to dismiss under Civil Rule 12(b)(6), and also argue that the Court's "related to" or supplemental subject matter jurisdiction permit the Court to resolve each of the issues presented in this proceeding. The matter is ripe for a decision.

## BACKGROUND

**A. Plaintiff's Complaint.**

This dispute stems from a prepetition contract between White River and Plaintiffs for the construction of Plaintiffs' retirement home hear Whitehall, Montana (the "Contract"). During the relevant time-period, the Non-Debtor Defendants collectively owned and/or operated White River, a log home designer, log home kit manufacturer, and general construction contractor based in Hamilton, Montana.[2]

On March 3, 2019, Plaintiffs and White River entered into a "cost-plus" residential construction contract (the "Contract"). The Contract, as originally drafted, estimated the total cost of the project would be $1,000,000. The parties amended the Contract on June 14, 2019 by adding to it Exhibit B-1, which projected the final cost of the project to be $1,353,496.40.[3] To

---

[2] ECF No. 1.
[3] *Id.*

date, the project remains incomplete. Despite the work that remains to be done, Plaintiffs allege they have paid White River in excess of $1.4 million.[4]

Plaintiffs' Complaint focuses on sixteen invoices issued by White River between July 19, 2019 and October 2, 2020. The Complaint generally alleges that throughout this time frame, White River's invoices misrepresented actual costs and purported to charge Plaintiffs for work that had not yet been completed or was never completed. In addition, White River allegedly issued at least nine "change orders" during this time frame, which Plaintiffs contend were intended to "defraud more money" from them and/or "appease" them when they questioned various charges on the invoices. Finally, Plaintiffs' Complaint alleges that White River failed to pay several subcontractors hired to work on the project and materially misrepresented to the subcontractors that it was Plaintiffs' failure to pay the invoices that prevented White River from paying them.[5]

These underlying allegations form the basis for the six state law claims set forth in the Complaint: (1) fraud; (2) breach of contract; (3) bad faith; (4) Montana Consumer Protection Statute; (5) defamation; and (6) negligent infliction of emotional distress.[6]

**B. White River's Motion to Dismiss.**

White River's Motion[7] generally asserts that dismissal is appropriate because Plaintiffs' fail to state any claims upon which relief can be granted. More specifically, White River's Motion contends that Plaintiffs' fraud claim fails to allege "willful" and "malicious" conduct on the part of White River or the Non-Debtor Defendants, as necessary to prevail on a

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] ECF No. 4.

3

nondischargeability claim premised upon § 523(a)(6).[8] Additionally, White River contends that Plaintiffs' remaining claims do not fall into any of the nine categories of controversies that can be resolved in an adversary proceeding under Rule 7001. Accordingly, White River contends that these too fail to state a claim upon which relief can be granted.

    **C. Non-Debtor Defendants' Motion to Dismiss.**

The Non-Debtor Defendants' Motion similarly seeks dismissal of each claim set forth in Plaintiffs' Complaint.[9] Non-Debtor Defendants' Motion, unlike White River's Motion, asserts that dismissal of this proceeding is appropriate because this Court lacks subject matter jurisdiction to decide the case. Non-Debtor Defendants contend that none of Plaintiffs' claims against them fall within this Court's jurisdiction under 28 U.S.C. §§ 1334(b) and 157. Further, Non-Debtor Defendants contend that their joinder is not required under Civil Rule 19, as applicable in this action under Rule 7019.

    **D. Plaintiffs' Combined Response to the Motions.**

Plaintiffs filed a combined Response to the Motions asserting that dismissal was inappropriate.[10] With respect to Non-Debtor Defendants' Motion, Plaintiffs contend that their claims against Non-Debtor Defendants are rooted in corporate veil-piercing theories and, as such, may have an effect on White River's bankruptcy estate. Accordingly, Plaintiffs' Motion asserts that the claims against the Non-Debtor Defendants fall within this Court's "related to" jurisdiction and may appropriately be decided in this adversary proceeding.

---

[8] *Id.* Notably, and as mentioned above, the Complaint fails to contain any reference to § 523(a)(6), or any other subsection of the statute.
[9] ECF No. 10.
[10] ECF No. 13.

As to White River's Motion, Plaintiffs contend that dismissal for failure to state a claim is similarly inappropriate. Plaintiffs' Response argues that, notwithstanding their failure to allege that White River acted "willfully" and "maliciously," or reference § 523 in their Complaint at all, their fraud claim satisfies the notice pleading standard and should survive dismissal. With respect to Plaintiffs' remaining claims, Plaintiffs contend that, like their claims against Non-Debtor Defendants, their claims against White River should not be dismissed because they fall within this Court's supplemental, "related to," jurisdiction.

## ANALYSIS

The arguments presented by White River and the Non-Debtor Defendants require this Court to consider the statutory limitations on its subject matter jurisdiction and federal pleading standards. The Court deems it appropriate to address Non-Debtor Defendants' Civil Rule 12(b)(1) arguments first.

**A. Dismissal under Civil Rule 12(b)(1).**

Civil Rule 12(b)(1) contemplates dismissal of a claim or cause of action where the presiding court lacks subject matter jurisdiction. Rule 7012 makes Civile Rule 12(b)(1) applicable in this adversary proceeding. A motion to dismiss under Civil Rule 12(b)(1) may either: (1) attack the allegations in the complaint facially, as insufficient to confer subject matter jurisdiction on the court; or (2) attack the existence of subject matter jurisdiction in fact. *In re Livdahl*, 2019 WL 1760797 *4 (9th Cir. BAP 2019).

When, as here, a party has yet to answer the complaint or engage in discovery, a motion to dismiss under Civil Rule 12(b)(1) is treated as a facial attack. *Id.* In a facial attack, the party seeking dismissal asserts that the allegations leveled in the complaint are insufficient on their face to invoke federal subject matter jurisdiction. *Id.* When analyzing whether a facial attack

warrants dismissal under Civil Rule 12(b)(1), "all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself." *Id.* (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

### 1. Plaintiff's claims against the Non-Debtor Defendants do not fall within this Court's "related to" jurisdiction under 28 U.S.C. § 157.

Federal district courts are vested with original and exclusive subject matter jurisdiction of "all cases under title 11" and original but not exclusive jurisdiction of "all civil proceedings arising under title 11, arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a)–(b). 28 U.S.C. § 157(a) permits district courts to refer most of their bankruptcy jurisdiction to designated bankruptcy courts established under 28 U.S.C. § 151 as a unit of those same courts. 28 U.S.C. § 157(a). Every district court in the United States has availed themselves of this permission. 1 Collier on Bankruptcy ¶ 3.01[1] (16th ed. 2021).

Upon referral from the district court, a bankruptcy court's jurisdiction falls into four categories: (1) cases under title 11; (2) proceedings which "arise under" title 11; (3) proceedings that "arise in" a bankruptcy case; and (4) proceedings that are related to a bankruptcy case. *See* 28 U.S.C. § 1334(b). The "arising in" category generally encompasses "core proceedings" codified at 28 U.S.C. § 157(b)(2), which would not exist outside the context of a bankruptcy proceeding. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005).

The "related to" category encompasses a much broader set of claims and controversies. In this Circuit, courts apply the Third Circuit's "*Pacor*" test for determining whether "related to"

jurisdiction exists in a given case. *See In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).[11] Under the *Pacor* test, a bankruptcy court may appropriately exercise its "related to" jurisdiction if:

> *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original).

Nevertheless, *Pacor* made clear that a bankruptcy court's "related to" jurisdiction is not without limitation. There, the Third Circuit made clear that "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). "Judicial economy itself does not justify federal jurisdiction." *Pacor*, 743 F.2d at 994 (referencing 28 U.S.C. § 1471, the precursor to 28 U.S.C. § 1334(b)). In *Pacor*, the Third Circuit determined that it lacked jurisdiction over an adversary proceeding against non-debtor third parties that could not conceivably "determine any rights, liabilities, or course of action of the debtor." *Id.* at 995. At best, the Court determined, the adversary proceeding was "a mere precursor to [a] potential third party liability claim for indemnification" against the debtor. *Id.*

The facts in this case lead this Court to reach the same conclusion. The Plaintiffs' allegations against the Non-Debtor Defendants, even if proven true, would not necessarily have any effect on White River's bankruptcy estate. As in *Pacor*, such success would be, at best, a precursor to a separate indemnity proceeding between the Non-Debtor Defendants and White

---

[11] The Ninth Circuit's adoption of *Pacor* was also without limitation. *See Fietz*, 852 F.2d at 458 ("to the extent that other circuits may limit jurisdiction where the *Pacor* decision would not, we stand by *Pacor*.").

River. Plaintiffs fail to allege, much less explain, how Plaintiffs' success against the Non-Debtor Defendants would impact White River. Plaintiffs' argument is simply this: because their claims are rooted in veil-piercing theories, "[Non-Debtor Defendants] may owe the bankruptcy estate for their fraudulent behavior against Plaintiffs." The relationship between Plaintiffs' claims against the Non-Debtor Defendants and any effect those claims could conceivably have on White River's bankruptcy is tenuous at best and insufficient to confer subject matter jurisdiction under 28 U.S.C. § 157(a).[12]

### 2. Plaintiff's claims against the Non-Debtor Defendants fall within this Court's supplemental jurisdiction.

While one could reasonably presume this Court's subject matter jurisdiction begins and ends with the statutes conferring it (28 U.S.C. §§ 1334 and 157), doing so would be a mistake. The Ninth Circuit has joined the minority of courts that have interpreted 28 U.S.C. § 1367(a) as conferring on bankruptcy courts "supplemental" subject matter jurisdiction.

28 U.S.C. § 1367(a) provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within which such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In *Pegasus Gold*, the Ninth Circuit concluded that the "supplemental jurisdiction" conferred to district courts under 28 U.S.C. § 1367(a) was similarly conferred upon bankruptcy courts. 394 F.3d at 1194-95. Specifically, the Circuit held that once a bankruptcy court concludes it has

---

[12] The only references to defendants Oury, Turry and Cleveland are in the caption and paragraphs 12-14. Not a single substantive allegation in the Complaint refers to these defendants. The references to Rostad and Hayes are limited and, in the case of Rostad, allege in part that he "corrected an invoice" (paragraph 104) and reduced the General Contracting Fee and issued a credit (paragraph 105). Hayes was the point person for communication (paragraphs 23-24).

jurisdiction over some claims asserted in an adversary case, that court is similarly vested with subject matter jurisdiction over any additional claims involving "a common nucleus of operative facts" that "would ordinarily be expected to be resolved in one judicial proceeding." *Id.* at 1195. The *Pegasus Gold* Court went so far as to say that a bankruptcy court is vested with supplemental jurisdiction "even when the subject matter jurisdiction" from which the supplemental jurisdiction arises "is based on 'related to' bankruptcy jurisdiction." *Id.* at 1195. Accordingly, a bankruptcy judge may constitutionally preside over a civil action that is merely "related to" a separate case or controversy that "*could conceivably* have any effect on the estate being administered in bankruptcy." *See Pacor*, 743 F.2d at 994.

The expansive view of supplemental jurisdiction set forth in *Pegasus Gold* has been criticized and/or rejected by a majority of courts,[13] but it remains binding on this Court. *See In re PG&E Corp.*, 610 B.R. 308, 311 (Bankr. N.D. Cal. 2019) ("a decision of a circuit court of appeal is binding on all lower courts in the circuit, including district courts and bankruptcy courts..."). At this stage of the proceeding, the record is in its infancy. As such, the Court's role is to simply consider the allegations in the Complaint and assess whether they satisfy the standards necessary to survive dismissal under Civil Rules 12(b)(1) and 12(b)(6). While the Complaint's deficiencies, addressed in greater detail below, make such an assessment difficult,

---

[13] Despite the Ninth Circuit's interpretation of 28 U.S.C. § 1367, other courts faced with the issue have not interpreted the statute so broadly. *See, e.g., Matter of Walker*, 51 F.3d 562, 573 (5th Cir. 1995) (considering 28 U.S.C. § 157 and concluding "it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants."); *In re Adamson*, 334 B.R. 1, 12 (Bankr. D. Mass. 2005) (labeling the contention that a bankruptcy court may exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a) "a dubious proposition in view of the decisions in the First Circuit"); *see also In re Kebe*, 444 B.R. 871, 880 (Bankr. S.D. Ohio 2011) (compiling cases holding that bankruptcy courts are not authorized to exercise supplemental jurisdiction).

the Court has resolved its doubts in favor of Plaintiffs and concludes that *Pegasus Gold* dictates dismissal under Civil Rule 12(b)(1) for lack of subject matter jurisdiction is inappropriate.[14]

Here, neither White River nor the Non-Debtor Defendants contend this Court lacks subject matter jurisdiction to resolve the claims asserted by Plaintiffs against White River. Although the Court concludes it lacks direct "related to" jurisdiction over the claims asserted against the Non-Debtor Defendants, it is not convinced that those claims fall beyond the extensive reach of supplemental jurisdiction described in *Pegasus Gold* because the claims are based on a common nucleus of operative facts. Accordingly, the Non-Debtor Defendants' Motion must be denied.

### B. Dismissal under Civil Rule 12(b)(6).

Rule 7012 also makes Civil Rule 12(b)(6) applicable in this adversary proceeding. Civil Rule 12(b)(6) contemplates dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Civil Rule 12(b)(6), a complaint must set forth cognizable legal theories and sufficient factual details in support of those theories. *Johnson v. Riverside Healthcare Sys., LP*, 535 F.3d 1116, 1121-22 (9th Cir. 2008). As the Supreme Court explained in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556. U.S. 662, 678 (2009). In other words, a complaint must "plead facts that are more consistent with the asserted liability and show (as opposed to merely allege) the pleader is entitled to relief." 10 Collier on Bankruptcy ¶ 7012.06 (16th 2021) (citing *Iqbal*, 556 U.S. at 679).

---

[14] It is difficult to analyze the extent to which the claims against the Non-Debtor Defendants would "*conceivably* have any effect on the estate being administered in bankruptcy," when the contours of those specific claims are impossible to discern.

In determining the sufficiency of the claims contained in Plaintiffs' Complaint here, the Court must "accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Houchin*, 2020 WL 3048194 *3 (9th Cir. BAP 2020). However, the Court need not provide the same treatment with respect to "conclusory allegations or legal characterizations cast in the form of factual allegations." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Although not addressed as comprehensively in the Motions, the Court notes that the Complaint fails to comply with Civil Rule 8, made applicable in this proceeding under Rule 7008. Rule 7008 itself requires that all adversary complaints "contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court." The Complaint fails to do so. Civil Rule 8(a) requires "a short and plain statement of the grounds for the court's jurisdiction." Again, the Complaint is deficient in this regard although, as explained above, the Court has independently determined it has subject matter jurisdiction in this proceeding. Finally, the Complaint fails to comply with Civil Rule 8(a)(2), which requires that each claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) is intended to give a defendant "fair notice of the basis for [a plaintiff's] claims." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002).

The Court cannot determine from its reading of the Complaint the basis for Plaintiffs' claims, even if each of their allegations were proven true. In this case, the Complaint is entitled "Complaint Objecting to Debtor's Discharge, Damages." On its face, the Complaint appears to suggest that this adversary proceeding is one seeking to object to White River's discharge under

11

Rule 7001(4).[15] However, the Complaint's Prayer for Relief requests that "Judgment be entered in Plaintiffs' favor for a sum to be determined," and that such "Judgment to be declared non-dischargeable." The Prayer for Relief seemingly conflicts with the title of the Complaint and is more indicative of an adversary proceeding under Rule 7001(6) "to determine the dischargeability of a debt."

If the Complaint is intended to initiate a proceeding under Rule 7001(6), the factual allegations are insufficient for the Court to determine the basis of Plaintiffs' alleged claim. Although the Complaint includes the sub-heading, "fraud," it remains unclear whether Plaintiffs seek a determination of dischargeability under § 523(a)(2)(A), or some other subsection of § 523.[16] Alternatively, if Plaintiffs do not prevail on their "fraud" claim, but prevail on one of their other claims, the Court, White River, and the Non-Debtor Defendants are left to guess the basis upon which Plaintiffs assert those claims are not subject to discharge. This example highlights, in part, the insufficiency of the Complaint.

The Complaint fails to comply with Rule 7008 and Civil Rule 8(a). Since the Complaint fails to satisfy the Civil Rule 8(a) pleading standard, it cannot survive a Civil Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678 (discussing Civil Rule 8(a) and holding that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."). Here, the factual matter alleged in the

---

[15] Rule 7001(4) permits adversary proceedings "to object to or revoke a discharge."
[16] Ordinarily, a claim for fraud must be pled with particularity. Civil Rule 9(b). Plaintiffs' Complaint fails to do so. Additionally, in this circuit, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). Again, the Complaint is deficient, and fails to identify set the role each defendant played in the alleged fraud.

pleadings is insufficient for the Court to conclude Plaintiffs have stated any claim that is plausible on its face, except their breach of contract claim.

The Complaint's factual deficiencies are compounded by the exclusion of any reference to the Code and inconsistencies already evident in the record. The Complaint includes subheadings for the alleged claims: fraud; breach of contract; bad faith; Montana Consumer Protection Act; defamation; and, negligent infliction of emotional distress.[17] However, in the response to the Motion, Plaintiffs explained that their "claims against the non-debtor defendants are rooted in corporate veil piercing theories."[18] The Court cannot reconcile this explanation with the breach of contract, defamation, consumer protection, and negligent infliction of emotional distress subheadings in the Complaint. More importantly, nothing alleged in the Complaint, even under a liberal reading and if taken as true, puts the parties on notice that Plaintiffs contend that the corporate entity of White River was used as an "alter ego" of the Non-Debtor defendants or that Plaintiffs are pursuing a veil piercing theory.[19]

Notwithstanding the Complaint's deficiencies, the Court deems it appropriate to grant Plaintiffs' leave to amend, despite the fact that it was not requested. Civil Rule 15(a)(2), made

---

[17] The Court notes that Plaintiffs filed duplicative proof of claims 65 and 67 in the bankruptcy case, both in the amount of $951,616.75. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (holding that a trial court may take judicial notice of "matters of public record" and materials "submitted with and attached to the Complaint."). The explanation for those claims is "material and labor paid for but not received." The Court cannot determine what if any nexus there might be between Plaintiffs' proof of claim and, for example, the defamation or negligent infliction of emotional distress claims alleged in the Complaint. This is a further example of the Complaint's factual insufficiency.

[18] ECF No. 13.

[19] Adding to the confusion, the Court notes that the Cover Sheet attached to the Complaint indicates the action seeks: recovery of money or property, § 542 (turnover); recovery of money or property, § 548 (fraudulent transfer); Objection/revocation of discharge, § 727(c), (d), (e), and; dischargeability, § 523(a)(2). ECF No. 1.

applicable here by Rule 7015, directs courts to "freely give leave when justice so requires." As such, the Ninth Circuit has made clear that a court should not grant a motion to dismiss under Civil Rule 12(b)(6) without granting leave to amend "unless it is clear…that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). At this stage, the Court harbors doubts regarding the viability of Plaintiffs' claims. However, to afford Plaintiffs' an opportunity to address the deficiencies, leave to amend will be granted.

## CONCLUSION

For the reasons stated above, the Court will enter a separate Order denying the Non-Debtor Defendants' Motion and granting White River's Motion. The Order will provide Plaintiffs with a date by which any further amended Complaint shall be filed.

Dated: September 10, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana